UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| **FREDERICK BISHOP,** | ) |
| **Plaintiff,** | ) |
| v. | ) No. 19-cv-06640 |
| **JUSTIN BOYER, et al.,** | ) Judge Jeffrey I. Cummings |
| **Defendants.** | ) |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Frederick Bishop ("Bishop" or "plaintiff") brings this action pursuant to 42 U.S.C. §1983 alleging that his Fourth Amendment rights were violated when Chicago police officers stopped the car he was riding in on July 3, 2019 to conduct a traffic stop to investigate suspected narcotics activity reported by defendant Sergeant Johnny Christian ("Sergeant Christian").  Plaintiff also brings a state law claim for false arrest after defendant officer Justin Boyer ("Officer Boyer") found a defaced gun in the car he was riding in and defendant Detective Scott Konior ("Detective Konior") created an investigative alert with probable cause to arrest plaintiff.  Defendants moved for summary judgment, (Dckt. #119), arguing that the claims are barred by *Heck v. Humphrey*, 512 U.S. 477 (1994), supported by reasonable suspicion, and that defendants are entitled to qualified immunity, among other reasons.  For the reasons set forth below, the Court grants defendants' motion for summary judgment as to plaintiff's federal claim and dismisses plaintiff's state law claim for false arrest without prejudice pursuant to *Heck v. Humphrey*.

1

I.     **LEGAL STANDARD FOR SUMMARY JUDGMENT**

Summary judgment is appropriate when the moving party shows "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). "A genuine dispute is present if a reasonable jury could return a verdict for the nonmoving party, and a fact is material if it might bear on the outcome of the case." *Wayland v. OSF Healthcare Sys.*, 94 F.4th 654, 657 (7th Cir. 2024); *FKFJ, Inc. v. Vill. of Worth*, 11 F.4th 574, 584 (7th Cir. 2021) (the existence of a factual dispute between the parties will not preclude summary judgment unless it is a genuine dispute as to a material fact); *Hottenroth v. Vill. of Slinger*, 388 F.3d 1015, 1027 (7th Cir. 2004) (issues of material fact are material if they are outcome determinative).

When the moving party has met that burden, the non-moving party cannot rely on mere conclusions and allegations to concoct factual issues. *Balderston v. Fairbanks Morse Engine Div. of Coltec Indus.*, 328 F.3d 309, 320 (7th Cir. 2003). Instead, it must "marshal and present the court with the evidence [it] contends will prove [its] case." *Goodman v. Nat. Sec. Agency, Inc.*, 621 F.3d 651, 654 (7th Cir. 2010). Thus, a mere "scintilla of evidence" supporting the non-movant's position does not suffice; there must be evidence on which the jury could reasonably find for the non-moving party. *Anderson*, 477 U.S. at 248. In determining whether a genuine issue of material fact exists, all facts and reasonable inferences must be drawn in the light most favorable to the non-moving party. *King v. Hendricks Cty. Commissioners*, 954 F.3d 981, 984 (7th Cir. 2020). Yet, the nonmovant "is not entitled to the benefit of inferences that are supported only by speculation or conjecture." *Boss v. Castro*, 816 F.3d 910, 916 (7th Cir. 2016). Ultimately, summary judgment is granted only if "no reasonable trier of fact could find in favor of the non-moving party." *Hoppe v. Lewis Univ.*, 692 F.3d 833, 838 (7th Cir. 2012) (cleaned up).

## II. FACTUAL RECORD

The pertinent facts, construed in the light most favorable to plaintiff, are as follows.

### A. Sergeant Christian's Observations of Plaintiff's Activities

On July 3, 2019, Sergeant Christian was performing surveillance and observed a SUV parked in front of him. (Dckt. #127, Plaintiff's response in opposition to defendants' Local Rule 56.1 statement of material facts ("DSOF Resp."), ¶9). He saw plaintiff exit the backseat of the vehicle on the driver's side, cross the street, meet another individual, and exchange an unknown object for U.S. currency before returning to the SUV. (*Id.*; Dckt. #131, Defendants' response in opposition to plaintiff's Local Rule 56.1 statement of additional material facts ("PSAF Resp."), ¶6). Sergeant Christian subsequently watched plaintiff engage in two additional exchanges, one approximately thirty seconds later and the other approximately a minute later, and both within a few blocks of each other. (DSOF Resp. ¶¶10–11). For all three encounters, Sergeant Christian testified that he saw plaintiff place "his right hand on his hip area," before reentering the car. (*Id.* ¶¶9–11). Sergeant Christian then observed the car drive off but maintained surveillance of the car. (*Id.* ¶11).

Sergeant Christian relayed to fellow officers Boyer, Suggs, and Howard that he observed plaintiff engage in what he believed to be three separate hand-to-hand narcotics transactions and that plaintiff "might be armed based on Plaintiff's motions to his right hip." (*Id.* ¶¶12-13). Sergeant Christian instructed the officers to pull the SUV over for a narcotics investigation. (*Id.* ¶14). These observations formed the sole basis to pull over the car. (PSOF Resp. ¶¶12–14).

### B. Defendant Boyer and Officers Howard and Suggs Pull Over the SUV

Defendant Boyer, along with officers Suggs and Howard, thereafter pulled the SUV over and ordered plaintiff out of the vehicle. (DSOF Resp. ¶14, 16). Plaintiff was placed in handcuffs

3

near the rear of the car and patted down, "[b]ased on Sergeant Christian's observations that had been relayed over the radio, and for officer safety." (*Id.* ¶16). The SUV's driver consented to a vehicle search, although plaintiff disputes that the driver's consent was "knowing and voluntary after being fully apprised of her rights." (*Id.* ¶17).

The officers did not find any narcotics during the stop. (PSAF Resp. ¶15). At his deposition, Sergeant Christian conceded that he could have been witnessing entirely lawful activity. (*See id.* ¶12; Dckt. #121-4 at 49–51). The officers searched the car and officer Boyer found a Ruger semiautomatic handgun with a defaced serial number located underneath a child seat occupying the SUV's passenger-side back seat. (DSOF Resp. ¶18; *see* Dckt. #122, Ex I, at 4:55–5:45). Plaintiff – who was handcuffed near the back of the car – thereafter started running and he outran all of the officers who were pursuing him despite the fact that his wallet and ID dropped to the ground while he fled.[1] (DSOF Resp. ¶¶19–20, 30).

### C. The Investigative Alert

Detective Konior was assigned the investigation and met with officers Boyer, Suggs, and Howard and Sergeant Christian. (*Id.* ¶21). Detective Konior reviewed the officers' body-cam footage, positively identified plaintiff, and created an "investigative alert with probable cause to arrest Plaintiff" on July 4, 2019. (*Id.* ¶23). The officers did not obtain a warrant and Detective Konior testified at his deposition that arrest warrants are "very difficult within Cook County" to obtain. (PSAF Resp. ¶16).

On July 6, 2019, officers Jurado and Najarro responded to a call that "an African American male with a white hat and neon vest was illegally selling residential parking permits

---

[1] Plaintiff responds to these facts by asserting his Fifth Amendment right against self-incrimination. However, plaintiff's run, and the officers' failure to catch him, are captured on the officers' body worn camera. (*See* Dckt. #122). This video evidence is sufficient to establish there facts for purposes of summary judgment. *See, e.g., Smith v. Finley*, 10 F.4th 725, 730 (7th Cir. 2021).

for the White Sox game." (DSOF Resp. ¶24). They observed plaintiff in a neon vest with a handmade "parking tenant" name tag holding U.S. currency in one hand and residential parking passes in the other. (*Id.* ¶25). After examining the passes, the Officers believed they were fake and detained plaintiff. (*Id.* ¶26). While detained, plaintiff admitted to making photocopies of parking passes and selling them. (*Id.*). The officers placed plaintiff in custody for soliciting unlawful business and obtained plaintiff's name and information to perform a name check, which informed them of the investigative alert to arrest plaintiff related to his July 3, 2019 escape. (*Id.* ¶¶26–27). Detective Konior was notified of plaintiff's arrest, went to interview him, and then contacted the Cook County State's Attorney's Office, which approved felony charges against plaintiff for unlawful use of a weapon, escape, and possession of a defaced firearm. (*Id.* ¶¶28–29, 32).

In May 2021, plaintiff ultimately pleaded guilty to the lesser charge of being a felon in possession of a firearm in Cook County Criminal Court. (DSOF Resp. ¶32). Plaintiff filed a post-conviction petition, *People v. Bishop*, No. 1-22-1917 (Ill. App. Ct.), but voluntarily withdrew the petition on April 9, 2025.[2]

### III.   ANALYSIS

Plaintiff brings a Section 1983 illegal seizure claim and a state law false arrest claim alleging that he was unlawfully pulled over by defendants and later falsely arrested pursuant to an illegal investigative alert. Defendants move for summary judgment on the grounds that plaintiff's claims are barred by (1) the *Heck* doctrine; (2) collateral estoppel; (3) the existence of

---

[2] The Court may take judicial notice of the state court record to the extent the facts' "accuracy cannot reasonably be questioned," *Ocasio v. Turner*, 19 F. Supp. 3d 841, 845 (N.D. Ind. 2014), such as plaintiff's criminal case docket. *General Elec. Capital Corp. v. Lease Resolution Corp.*, 128 F.3d 1074, 1080 (7th Cir. 1997). "The most frequent use of judicial notice of ascertainable facts is in noticing the contents of court records." *Id.* at 1081 (cleaned up).

reasonable suspicion and probable cause; and that defendants are entitled to qualified immunity and not subject to suit for plaintiff's state law claim pursuant to the Illinois Tort Immunity Act.

Because plaintiff's Section 1983 illegal seizure claim cannot survive if defendants are entitled to qualified immunity, the Court addresses that argument first.

### A. Defendants are Entitled to Qualified Immunity for Plaintiff's Illegal Search and Seizure Claim.

The doctrine of qualified immunity protects government officials from liability for civil damages in situations in which their conduct does not violate a clearly established statutory or constitutional right. *Gupta v. Melloh*, 19 F.4th 990, 1000 (7th Cir. 2021) (citing *Pearson v. Callahan*, 555 U.S. 223, 231 (2009)); *see also Plumhoff v. Rickard*, 572 U.S. 765, 778 (2014). "[O]nce the defense is raised, it becomes the plaintiff's burden to defeat it." *Smith v. Finkley*, 10 F.4th 725, 737 (7th Cir. 2021). "There are two inquiries in determining whether qualified immunity applies: [1] whether the facts, taken in the light most favorable to the party asserting the injury show that the officer's conduct violated a constitutional right; and [2] whether the right at issue was 'clearly established' at the time of the officer's alleged misconduct." *Tousis v. Billiot*, 84 F.4th 692, 698 (7th Cir. 2023) (cleaned up). Therefore, the Court begins with an analysis of whether defendants' actions in pulling over the SUV violated plaintiff's constitutional rights.

### 1. The Constitutional Right at Issue for Purposes of Qualified Immunity is the Fourth Amendment.

Plaintiff's illegal search and seizure claim alleges that defendant Boyer unlawfully pulled over the SUV plaintiff was in to conduct an investigatory stop premised on suspected narcotics activity. Defendants argue that they had reasonable suspicion to pull the car over. Plaintiff does

6

not address reasonable suspicion in his response brief, but rather focuses on probable cause, which is relevant to his arrest, but not required for the initial investigative stop.

"The Seventh Circuit recognizes three types of police-citizen encounters: a consensual encounter, an investigatory stop, and an arrest." *United States v. Hammonds*, 418 F.Supp.3d 292, 295 (N.D.Ill. 2019). The parties do not dispute that pulling plaintiff's car over was an investigative stop, also called a "Terry stop." (Dckt. ##120 at 9–10; 126 at 5). A Terry stop allows an officer to "conduct a brief, non-intrusive detention of a person if the officer has specific and articulable facts sufficient to give rise to a reasonable suspicion that a person has committed or is committing a crime." *Hammonds*, 418 F.Supp.3d at 295 (cleaned up). Under the Fourth Amendment, "[r]easonable suspicion is more than a hunch but less than probable cause and 'considerably less than preponderance of the evidence." *United States v. Snow*, 656 F.3d 498, 500 (7th Cir. 2011) (cleaned up). Crucially, reasonable suspicion turns on "an objective inquiry into all of the circumstances known to the officer at the time he stopped the defendant, including information relayed to him by fellow officers and police dispatchers." *Snow*, 656 F.3d at 500 (cleaned up); *Jewett v. Anders*, 521 F.3d 818, 823 (7th Cir. 2008) (reasonable suspicion requires "some minimal level of objective justification for making a stop, given the totality of the circumstances.") (cleaned up).

Therefore, to avoid summary judgment on his claim, plaintiff must ultimately show that there was no reasonable suspicion to pull over the SUV or that a disputed material fact precludes a finding of reasonable suspicion.

> **2. Plaintiff Has Failed to Produce Sufficient Evidence that Would Permit a Reasonable Jury to Find that Defendants Lacked Reasonable Suspicion to Conduct the Investigatory Stop.**

The Court must examine the record to determine whether plaintiff proffered sufficient evidence to permit a reasonable jury to find in his favor. *See Singer v. Raemisch*, 593 F.3d 529, 533 (7th Cir. 2010). Again, the Court's inquiry looks to the totality of the circumstances. *See Jewett*, 521 F.3d at 823. The inquiry for plaintiff's Fourth Amendment claim therefore turns on whether reasonable suspicion existed to pull plaintiff's car over for a narcotics investigation. Again, all that is needed for the stop are "specific and articulable facts sufficient to give rise to a reasonable suspicion that a person has committed or is committing a crime." *Hammonds*, 418 F.Supp.3d at 295.

The undisputed facts relevant to this claim are as follows:

On July 3, 2019, Sergeant Christian observed plaintiff exit a parked SUV, cross the street to meet another individual, exchange an object for money, and return to the car. (DSOF Resp. ¶9; PSOF Resp. ¶6). Sergeant Christian observed two more exchanges both within a matter of minutes and within a few blocks from each other. (DSOF Resp. ¶¶10–11). For all three encounters, Sergeant Christian testified that he saw plaintiff place "his right hand on his hip area," before reentering the car. (*Id.* ¶¶9–11). Sergeant Christian relayed his observations to officers Boyer, Suggs, and Howard and instructed them to conduct a traffic stop. He communicated that he believed he observed plaintiff engage in narcotics transactions and that plaintiff "might be armed based on Plaintiff's motions to his right hip." (*Id.* ¶13). After pulling the car over, plaintiff was ordered out of the vehicle and placed in handcuffs near the rear of the car and patted down. (*Id.* ¶16).[3]

---

[3] Plaintiff attempts to lump the initial traffic stop together with the subsequent vehicle search. This is inappropriate for purposes of determining whether reasonable suspicion existed for the traffic stop

Defendants argue that reasonable suspicion is a low standard and has been found in similar situations. They rely on *United States v. Davis*, which found that officers had reasonable suspicion to conduct a narcotics investigatory stop after an officer observed two cars meet and the drivers exchanged something by sticking their hands out the window and driving off. No. 21 CR 85, 2021 WL 5168893, at *4–5 (E.D.Wis. July 28, 2021), *report and recommendation adopted*, 2021 WL 6495129 (E.D.Wis. Sept. 28, 2021). Similarly, in *U.S. v. Jones*, the court found that arresting officers had reasonable suspicion to stop Jones after observing two suspected drug transactions where Jones met with an individual, received currency, and then retrieved a small item from behind his car's tire to give to the individual. No. 7 CR 432, 2009 WL 424469, at *3 (N.D.Ill Feb. 19, 2009).

Seventh Circuit precedent is in accord with finding that the defendants here had reasonable suspicion to conduct an investigatory stop. *United States v. Ruiz*, 785 F.3d 1134, 1143 (7th Cir. 2015) (reasonable suspicion met for narcotics-based Terry stop where officers saw defendant interact with three different vehicles, suggestive of a drug operation); *United States v. Bullock*, 632 F.3d 1004, 1013 (7th Cir. 2011) (reasonable suspicion met where officer observed suspect making brief visits to residences and hosted brief meetings in his vehicle).

Plaintiff relies on *Hammonds* to argue otherwise. But there, the defendant officer claimed to have observed a drug transaction, relying only upon observing an individual "walking away from another individual and placing an unidentified object in his mouth." 418 F.Supp.3d at

---

notwithstanding the fact that the evidence regarding the stop and vehicle search overlap to some extent because the recovered gun formed the basis for plaintiff's later criminal charges and is thus relevant to his false arrest claim. *See, e.g., Foote v. Spiegel*, 118 F.3d 1416, 1423–24 (10th Cir. 1997) ("A determination of whether Spiegel was entitled to qualified immunity for claims arising out of the strip search would not necessarily determine whether Spiegel had sufficient reason to arrest Foote or whether Howe had sufficient reason to stop her."); *Gentry v. Sevier*, 597 F.3d 838, 847 (7th Cir. 2010) (Subsequent "discoveries cannot be used in retrospect to justify an initial search.").

298. The officer "may very well have believed that a drug transaction had just occurred," but could not identify any individual involved, and did not see any exchange of material. *Id.* *Hammonds* stands in stark contrast to plaintiff's situation where Sergeant Christian can point to three specific instances where he observed plaintiff meeting and making an exchange with another person.

Plaintiff also points to *Reid v. Georgia*, which found that no reasonable suspicion existed to stop an airport traveler where he fit the "so called 'drug courier profile,'" appeared to be trying to conceal the fact that he and his companion were traveling together, and the two travelers did not have luggage other than their shoulder bags. 448 U.S. 438, 441 (1980).[4] This case is factually inapposite. Again, plaintiff was observed in what appeared to be a serious of hand-to-hand exchanges with three other persons, and while he repeatedly stresses that Sergeant Christian did not specifically identify what was exchanged and that no narcotics were ultimately recovered, it matters not whether the reasonable suspicion for narcotics activity actually resulted in finding narcotics. *Id.* ("[T]here could, of course, be circumstances in which wholly lawful conduct might justify the suspicion that criminal activity was afoot."); *United States v. Baskin*, 401 F.3d 788, 793 (7th Cir. 2005) ("[B]ehavior which is susceptible to an innocent explanation when isolated from its context may still give rise to a reasonable suspicion when considered in light of all the factors at play."). (citing *United States v. Williams*, 627 F.3d 247, 252 (7th Cir. 2010)).

In sum: Sergeant Christian testified that he observed three hand-to-hand exchanges suggesting that plaintiff was performing drug transactions, and officers Boyer, Suggs, and

---

[4] The other cases upon which plaintiff relies relate to his argument that defendants lacked probable cause to search the SUV. (Dckt. #126 at 5, 7–8 (citing cases)). These cases are immaterial to the question of whether there was reasonable suspicion to justify the preceding traffic stop. *Supra*, at n.3.

Howard learned about such observations and conducted an investigative stop.[5] Plaintiff has not presented any evidence to dispute the specific and articulable facts that defendants rely upon to show that they had reasonable suspicion to make the traffic stop.

### 3. Plaintiff Failed to Establish that Defendant's Investigative Stop Violated a Clearly Established Right.

Even if plaintiff presented sufficient evidence to show that defendants' investigative stop lacked reasonable suspicion (and he has failed to do so), defendants would be entitled to qualified immunity on the Fourth Amendment claim if plaintiff cannot show that defendants' conduct violated a clearly established constitutional right such that they were on notice that their conduct would be clearly unlawful. *Siler v. City of Kenosha*, 957 F.3d 758, 757 (7th Cir. 2020) (citing *Saucier v. Katz*, 457 U.S. 194, 201–02 (2001)); *Dockery v. Blackburn*, 911 F.3d 458, 466 (7th Cir. 2018) (plaintiff bears the burden to show that a right is clearly established). "'Clearly established' means that, at the time of the officer's conduct, the law was sufficiently clear that every reasonable official would understand that what he is doing is unlawful." *Tousis*, 84 F.4th at 698 (cleaned up).

A plaintiff can show that a right is "clearly established" by statute or the Constitution in at least two ways: (1) pointing to an analogous case establishing the right to be free from the conduct at issue; or (2) showing that the conduct was "so egregious that no reasonable person could have believed that it would not violate clearly established rights." *Steidl v. Fermon*, 494

---

[5] Officers Boyer, Suggs, and Howard were permitted to rely on Sergeant Christian's relayed observations to perform the investigatory stop despite not observing any suspected criminal activity themselves. *See, e.g., Davis*, 2021 WL 5168893, at *4 (The collective knowledge doctrine "permits an officer to stop, search, or arrest a suspect at the direction of another officer or police agency, even if the officer himself does not have firsthand knowledge of facts that amount to the necessary level of suspicion to permit the given action.")

F.3d 623, 632 (7th Cir. 2007). Plaintiff's burden on this point is rigorous. As the Seventh Circuit has explained:

> [A] right is clearly established for qualified immunity purposes if its contours were sufficiently definite that any reasonable official in the defendant's shoes would have understood that he was violating it. In other words, existing precedent must have placed the statutory or constitutional question beyond debate. And in order to answer the question beyond debate, the Supreme Court has repeatedly emphasized that the clearly established law must share specific details with the facts of the case at hand. Though to defeat a defendant's assertion of qualified immunity plaintiffs need not produce a case directly on point, defining the applicable law at a high level of generality simply will not do. Only in the rare obvious case will the unlawfulness of the officer's conduct be sufficiently clear without existing precedent . . . addressing similar circumstances. This sounds like a high bar because it is—qualified immunity protects all but the plainly incompetent or those who knowingly violate the law.

*Doxtator v. O'Brien*, 39 F.4th 852, 863 (7th Cir. 2022) (cleaned up).

Plaintiff devotes a significant portion of his brief to arguing that "investigatory alerts" do not comport with the Illinois Constitution[6] and therefore defendants should not be granted immunity. This argument is both incorrect and irrelevant to plaintiff's Fourth Amendment claim. First, plaintiff's argument is no longer based on current law—the Illinois Supreme Court recently determined that "there is no basis to hold that arrests pursuant to investigative alerts violate the Illinois Constitution." *See People v. Clark*, __ N.E.3d __, 2024 WL 5163470, at *15 (Ill. Dec. 19, 2024); *People v. Chavez*, 262 N.E.3d 753, 783 (Ill.App.Ct. 2025) (same). Second, Detective Konior did not create an investigative alert until *after* plaintiff ran from police, i.e., after the relevant facts for his Fourth Amendment claim. (DSOF Resp. ¶¶21–23).

---

[6] Plaintiff additionally argues that investigative alerts do not comport with the U.S. Constitution but his argument is premised solely on a prior order of this Court which only discussed state law and which says nothing about its application to the U.S. Constitution or federal law. (*See* Dckt. #126 at 3, *quoting* Dckt. #53 "the state of Illinois law on this issue can best be described as unsettled.").

12

Furthermore, plaintiff does not mention the doctrine of qualified immunity or otherwise address any precedent sufficiently particularized to the facts of this case. *Doxtator*, 39 F.4th at 863. The Court has otherwise failed to find any case law that would have warned defendants that their actions amounted to an improper stop. Accordingly, plaintiff has failed to satisfy the "high bar" required to defeat defendants' assertion of qualified immunity. *Id.*; *Schimandle v. Dekalb Cnty. Sheriff's Off.*, 114 F.4th 648, 656 (7th Cir. 2024) ("Although the plaintiff need not point to an identical case finding the alleged conduct unlawful, he must point to precedent placing the statutory or constitutional question beyond debate.") (cleaned up).

### B. Plaintiff's State Law Claim for False Arrest is Barred by *Heck*.

Plaintiff's remaining claim for false arrest arises under state law. Plaintiff's claim is premised on Detective Konior issuing an investigative alert after officers recovered the defaced gun. Defendants argue that plaintiff's claim is barred by *Heck v. Humphrey*, 512 U.S. 477 (1994), whereas plaintiff argues that "if the arrest lacked probable cause or was based upon an unconstitutional investigative alert, then Plaintiff's complaint should not necessarily suffer from the *Heck* bar." (Dckt. #126 at 9).

The critical question here is whether plaintiff's claim "necessarily impl[ies]" the invalidity of his conviction. *McCann v. Neilsen*, 466 F.3d 619, 622 (7th Cir. 2006); *see Mannie v. Campos*, No. 16 C 1068, 2022 WL 5183879, at *5 (N.D.Ill. Oct. 5, 2022). In other words, plaintiff's false arrest claim cannot proceed if plaintiff has "affirmatively [pleaded] himself out of court." *Hyson USA, Inc. v. Hyson 2U, Ltd.*, 821 F.3d 935, 939 (7th Cir. 2016) (cleaned up).

To reiterate, plaintiff pleaded guilty to one count of being a felon in possession of a firearm in Cook County Criminal Court. (DSOF Resp. ¶32). The conviction is premised on defendants' July 3, 2019 SUV vehicle search discussed above, and in particular, the recovered

13

defaced semiautomatic which weapon was found on the seat next to plaintiff under the child seat. Detective Konior then created an investigative alert for plaintiff's arrest. A few days later, plaintiff was arrested for selling illegal parking passes. Once detained, officers searched plaintiff's name, discovered the investigative alert, and notified Detective Konior, who interviewed plaintiff and then contacted the Cook County State's Attorney's Office, which approved felony charges for unlawful use of a weapon, escape, and possession of a defaced firearm. In May 2021, plaintiff pleaded guilty to the lesser charge of being a felon in possession of a firearm. The stipulated facts underlying the plea include the vehicle search which resulted in the defaced gun and the issuance of the investigative alert. (Dckt. #121-6 at 17–18).

Here, plaintiff's challenge to probable cause is intertwined with his conviction and to challenge probable cause for his arrest would necessarily challenge his conviction. A finding that plaintiff's investigative alert was illegal or that probable cause was lacking would make the gun inadmissible and thus negate plaintiff's conviction. *See Ocasio v. Turner*, 19 F.Supp.3d 841, 852 (N.D.Ind. 2014). "Under *Heck,* until his conviction for resisting law enforcement is reversed, expunged, or invalidated by a state tribunal or called into question by a federal habeas writ, [plaintiff] cannot seek damages." *Id.*

Plaintiff correctly points out, however, that not all claims are inconsistent with *Heck*, including his federal illegal seizure claim relating to the traffic stop. (Dckt. #126 at 8–9). That claim does not rely on allegations wholly inconsistent with his conviction. The same cannot be said for plaintiff's false arrest claim which targets the probable cause and investigative alert leading to his May 2021 guilty plea. *See Ocasio*, 19 F.Supp.3d at 852 (A "false arrest claim is not automatically *Heck*-barred by a subsequent conviction for the same offense, but, in those

14

cases in which the grounds for the conviction flow from the same facts underlying the allegations of false arrest, the claim is barred.").

Any separate attack on plaintiff's investigative alert based on its alleged non-compliance with the Illinois Constitution likewise fails. While this Court previously found that constitutionality of investigative alerts in Illinois was "unsettled," that is no longer the case because it has now been determined that such alerts do not violate the Illinois Constitution. *See Clark*, 2024 WL 5163470, at *15; *Chavez*, 262 N.E.3d at 783.[7]

## CONCLUSION

For all of the above reasons, the Court grants defendants' motion for summary judgment, (Dckt. #119), as to plaintiff's Section 1983 illegal seizure claim and it dismisses plaintiff's state law false arrest claim without prejudice because it is barred by *Heck v. Humphrey,* 512 U.S. 477 (1994).

**Date: September 26, 2025**

*Jeffrey I. Cummings*
**Jeffrey I. Cummings**
**United States District Court Judge**

---

[7] Because plaintiff's federal claim fails to proffer sufficient evidence for a reasonable jury to find a Fourth Amendment violation and because plaintiff's state law claim is premised on allegations which undermine his conviction in contravention to *Heck*, the Court need not address defendants' remaining arguments concerning collateral estoppel and the Illinois Tort Immunity Act.